[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 13, 2007
THOMAS K. KAHN
CLERK

No. 07-12299
_____

D. C. Docket No. 07-00623-CV-MSH-1

AT&T MOBILITY, LLC,
f.k.a. Cingular Wireless LLC,

Plaintiff-Appellee,

versus

NATIONAL ASSOCIATION FOR
STOCK CAR AUTO RACING, INC.,

Defendant-Appellant,

SPRINT NEXTEL CORPORATION,

Intervenor-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(August 13, 2007)**

Before EDMONDSON, Chief Judge, CARNES and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellants, the National Association for Stock Car Auto Racing, Inc.

("NASCAR") and Sprint Nextel Corporation ("Sprint Nextel"), appeal the district

court's order granting Appellee, AT&T Mobility LLC ("AT&T Mobility"), a

preliminary injunction enjoining NASCAR from interfering with the display of the

AT&T logo on the #31 Car in NASCAR Cup Series races. The parties have raised

numerous issues on appeal, including a jurisdictional issue whether AT&T

Mobility has standing to challenge the decision by NASCAR to bar the owner of

the #31 Car, RCR Team # 31, LLC ("RCR"), from displaying the AT&T logo. For

the reasons stated below, we conclude that AT&T Mobility lacks standing to

challenge NASCAR's decision and therefore, we vacate the district court's order.

## I. BACKGROUND

Appellant NASCAR is the sanctioning body of stock car racing. Each year,

NASCAR holds 17 of the top 20 attended sporting events in the United States.

NASCAR races are broadcast in over 150 countries to approximately 75 million

fans. NASCAR consists of three major national series as well as eight regional

series and one local grassroots series.[1] One of NASCAR's highest profile and

---

[1] Many of the facts summarized here are further detailed in the district court's order. *See AT&T Mobility LLC v. National Ass'n for Stock Car Auto Racing, Inc.*, 487 F.Supp.2d 1370 (N.D. Ga. 2007).

most visible racing series is known as the "Cup Series."[2]

On June 17, 2003, NASCAR and Appellant Sprint Nextel, which is engaged in the business of providing telecommunications services, entered into the "Nextel Sponsorship Agreement," providing that beginning with the 2004 Season, Sprint Nextel would become the Official Series Sponsor of the NASCAR NEXTEL Cup Series.[3]

The Nextel Sponsorship Agreement granted exclusivity to Sprint Nextel as the sole telecommunications company sponsoring NASCAR Cup Series races. Sprint Nextel agreed to pay a publicly reported price of $700 million for its exclusive sponsorship rights over a 10-year period. To implement Sprint Nextel's exclusivity, the Nextel Sponsorship Agreement contained, *inter alia*, a "Category" definition and a list of "Competitors." The parties agreed that Sprint Nextel would receive exclusive sponsorship rights in its Category, which includes wireline and wireless communications services, including local and long distance services, wireless services, two-way radio services and associated equipment such as wireless phones and PDAs (e.g., Palm Pilots).

---

[2] From 1972-2003, the series was known as the "Winston Cup Series" and was sponsored by R.J. Reynolds Tobacco Company.

[3] The Nextel Sponsorship Agreement was originally executed between NASCAR and Nextel Communications, which has since merged with Sprint Corporation and changed its name to Sprint Nextel Corporation.

Sprint Nextel insisted upon exclusivity in its Category of telecommunications services because it believed that without such rights, a Competitor might attempt to enter the sport as a sponsor. The Nextel Sponsorship Agreement defines "Competitor" to include certain designated companies, including Alltel, AT&T, AT&T Corp., AT&T Wireless, SBC Communications, BellSouth and Cingular. Under the Nextel Sponsorship Agreement, Competitors of Sprint Nextel are barred from advertising and sponsorships in connection with NASCAR Nextel Cup Series events.

During the negotiation of the Nextel Sponsorship Agreement, Sprint Nextel became aware that certain Sprint Nextel Competitors already sponsored two racing teams, including the #31 Car, which since 2001 had been sponsored by Cingular Wireless LLC. The #31 Car, which races in NASCAR's Cup Series, is owned by RCR and driven by Jeff Burton. As an accommodation to the racing teams already sponsored by Sprint Nextel Competitors, NASCAR and Sprint Nextel incorporated into the Nextel Sponsorship Agreement narrow exceptions to Sprint Nextel's exclusivity. The Nextel Sponsorship Agreement identified the racing teams, including RCR's #31 Car, that under certain terms and conditions would be permitted by NASCAR to continue their pre-existing sponsorship agreements with Sprint Nextel Competitors. Pursuant to the provisions of the Nextel Sponsorship

4

Agreement providing narrow exceptions to Sprint Nextel's exclusivity, NASCAR agreed to take all legally permissible steps to protect Sprint Nextel's exclusivity.

NASCAR regulates stock car racing through annual contracts between itself and drivers and car owners, known as "Driver and Car Owner Agreements." NASCAR, RCR and Jeff Burton are parties to a 2007 Driver and Car Owner Agreement (the "RCR Agreement").[4] The RCR Agreement implements the exclusivity NASCAR granted Sprint Nextel by preventing RCR from, *inter alia*, placing Sprint Nextel Competitors' product or service identifications on the #31 Car. However, an Addendum to the RCR Agreement designed to give effect to the narrow exceptions envisioned by the Nextel Sponsorship Agreement includes a grandfather clause that permits RCR to renew its non-complying sponsorship so long as the sponsor's brand position is not increased on the #31 Car. In addition, the grandfather clause provides that in the event the sponsorship relationship with the Sprint Nextel Competitor is not renewed, RCR will not be permitted to enter into a subsequent sponsorship agreement with a different Sprint Nextel Competitor.[5]

---

[4] Since at least 2004, NASCAR and RCR have executed materially indistinguishable annual agreements.

[5] On April 4, 2005, in response to marketplace rumors concerning mergers in the telecommunications industry, NASCAR sent a letter to RCR clarifying that in the event Cingular Wireless LLC's name changed, NASCAR interpreted the grandfather clause as prohibiting any

Appellee AT&T Mobility is a limited liability company formerly known as Cingular Wireless LLC ("Cingular") whose members are subsidiaries of AT&T Inc. and BellSouth Corporation. Since 2001, when it entered into its first sponsorship agreement with RCR (the "Cingular Sponsorship Agreement"), Cingular has been the primary sponsor of the #31 Car.[6] Pursuant to the Cingular Sponsorship Agreement, the #31 Car originally featured the Cingular brand and logo as part of its paint scheme. However, on December 29, 2006, AT&T Inc. merged with BellSouth Corporation. In connection with the merger, Cingular changed its name to AT&T Mobility LLC and is currently transitioning its trade name, brand, and logos from "Cingular Wireless" to "AT&T."

On January 4, 2007, after the merger of AT&T Inc. and BellSouth Corporation, RCR submitted for NASCAR's approval a paint scheme for the #31 Car that, while maintaining the Cingular Wireless logo on the hood of the car, introduced the AT&T logo on the rear quarter panel. On January 16, 2007, NASCAR rejected RCR's proposed change to the paint scheme basing its decision on its belief that the Sprint Nextel Sponsorship Agreement prohibited the display of the AT&T logo and that RCR's grandfather right pursuant to the Addendum in

---

paint scheme or branding on the #31 Car that promoted this new name or a new third party.

[6] The original Cingular Sponsorship Agreement expired in 2004, but was renewed by the parties and is set to expire in December 2010.

the RCR Agreement applied only to the Cingular logo.

On March 26, 2007, AT&T Mobility filed an amended complaint against NASCAR setting forth claims for, *inter alia*, breach of the RCR Agreement and breach of the implied covenant of good faith and fair dealing. AT&T Mobility also sought a declaratory judgment from the district court that it could place the name, brand, logos, and marks of its choosing on the #31 Car, driver uniforms, helmets, and in all merchandising and licensing rights, including a change of its name, brand, logos, and marks to "AT&T." In addition, AT&T Mobility requested a preliminary injunction enjoining NASCAR from interfering with its right to place its name, brand, logos, and marks on the #31 Car. On May 18, 2007, the district court concluded that AT&T Mobility had standing as a third party beneficiary of the RCR Agreement to sue NASCAR and granted the requested preliminary injunction.

## II. DISCUSSION

We generally review a district court's order of a preliminary injunction with deference, reversing only in the event of an abuse of discretion. *See Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Intern.,* 238 F.3d 1300 (11th Cir. 2001*)* ("[T]he grant of permanent injunctive relief is generally reviewed for an abuse of discretion."); *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304

7

F.3d 1167 (11th Cir. 2002) (noting the "trial court is in a far better position . . . to evaluate that evidence, and we will not disturb its factual findings unless they are clearly erroneous."); *but see Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1253 (11th Cir. 2005) ("We review the district court's . . . application of the law *de novo*, premised on the understanding that application of an improper legal standard is never within a district court's discretion.").

Standing, however, "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Dillard v. Baldwin County Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000); *EF Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990). In fact, we are obliged to consider standing *sua sponte* even if the parties have not raised the issue because an appellate court "must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005); *see also Florida Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999) (stating that "every court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates."). As with all jurisdictional issues, this Court reviews standing *de novo*. *See, e.g.*, *McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 482 (11th Cir. 1996); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 408 (11th

Cir. 1999).

For AT&T Mobility to have standing to challenge NASCAR's decision under the RCR Agreement to prohibit the display of the AT&T logo on the #31 Car, it must establish that it has suffered an injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) . To establish injury in fact, AT&T Mobility must first demonstrate that NASCAR has invaded a "legally protected interest" derived by AT&T Mobility from the RCR Agreement between NASCAR and RCR. *See Dillard*, 225 F.3d at 1275 (11ᵗʰ Cir. 2000) (*quoting Lujan*, 504 U.S. at 560-61).

The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law. *See, e.g.*, *Miree v. DeKalb County*, 433 U.S. 25, 29-33, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (holding that, even when the United States was a party to the contracts at issue, "whether petitioners as third-party beneficiaries of the contracts have standing to sue" was a question of state law, not of federal common law); *see also Osman v. Hialeah Hous. Auth.*, 785 F.2d 1550, 1550 (11th Cir. 1986) (observing that whether a plaintiff has a constitutionally protected property interest in an employment

contract is a question of state law).[7]

Notwithstanding AT&T Mobility's status as a non-party to the RCR Agreement, Georgia law permits a "beneficiary of a contract made between other parties for his benefit [to] maintain an action against the promisor on the contract." GA. CODE ANN. § 9-2-20(b) (West 2007). However, in order for a third party to have standing to enforce a contract under section 9-2-20(b) of the Georgia Code, it must clearly appear from the contract that it was intended for his benefit. *Danjor v. Corporate Constr., Inc.*, 613 S.E.2d 218, 220 (Ga. Ct. App. 2005)*; Rowe v. Akin & Flanders, Inc.*, 525 S.E.2d 123, 125 (Ga. Ct. App. 1999); *Backus v. Chilivis*, 224 S.E.2d 370, 372 (Ga. 1976).

We disagree with the district court's conclusion that the RCR Agreement on its face illustrates an intention by NASCAR and RCR to benefit Cingular (now AT&T Mobility). A third party beneficiary need not be specifically named in the contract, but the parties' intention to benefit the third party must be evident from the face of the contract. *See Northen v. Tobin*, 585 S.E.2d 681 (Ga. Ct. App. 2003); *Plantation Pipe Line Co. v. 3-D Excavators, Inc.*, 287 S.E.2d 102 (Ga. Ct. App. 1981). The RCR Agreement clearly did not require RCR to renew its

---

[7] The district court in its order and the parties on appeal have elected, without a choice-of-law analysis, to rely on Georgia law. We therefore apply Georgia law in reaching our conclusion.

10

sponsorship with Cingular. In fact, under the RCR Agreement, RCR was free to seek the sponsorship of any company not included within the narrow universe of Sprint Nextel Competitors as defined by the Sprint Nextel Sponsorship Agreement. The Addendum to the RCR Agreement was intended to protect RCR from the potential harm caused by a sudden loss of sponsorship due to Sprint Nextel's exclusivity. Any benefit to Cingular (now AT&T Mobility) resulting from NASCAR's commitment to grant RCR the option to continue and renew its sponsorship agreement was merely incidental to NASCAR's intended purpose of preserving RCR's choice of sponsorship. The mere fact that Cingular (now AT&T Mobility) would "benefit incidentally from performance of the agreement is not alone sufficient." *Danjor*, 613 S.E.2d at 220.

That the RCR Agreement limited RCR's options with respect to seeking a new sponsor in the telecommunications industry is insufficient evidence of an intention to make Cingular (now AT&T Mobility) an intended beneficiary of the RCR Agreement. The Addendum to the RCR Agreement prevented RCR from allowing Cingular to increase its brand position on the #31 car or executing a new sponsorship agreement with another Sprint Nextel Competitor. Any effect these limitations had in persuading RCR to keep Cingular (now AT&T Mobility) as its sponsor was incidental to the intended purpose of providing RCR the option to

11

renew its current sponsorship if, and only if, it elected to do so, and freezing the status quo with respect to the sponsorship of racing teams by Sprint Nextel Competitors. Consequently, we are unable to see how the parties could have intended these sponsorship guidelines to produce anything more than an incidental benefit to Cingular (now AT&T Mobility).

Further, we are unable to conclude that in executing the RCR Agreement NASCAR promised to render any performance to Cingular. Georgia law is clear that there must be "a promise by the promisor to the promisee to render some performance to [the] third person, and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary." *Danjor*, 613 S.E.2d at 220. The promisor NASCAR made a promise only to the promisee RCR to preserve and protect RCR's sponsorship agreement with Cingular notwithstanding the exclusivity granted to Sprint Nextel. RCR was the intended beneficiary of that promise, not Cingular. Nothing in the RCR Agreement required NASCAR to ensure that RCR continued with Cingular as its sponsor. RCR had the option to discontinue or elect not to renew its sponsorship agreement with Cingular, and NASCAR assumed no duty to preserve or protect Cingular's (or any of its successor's) rights in the event RCR exercised that option.

NASCAR's admission that RCR may continue to display the branding of "Cingular" despite its status as a Sprint Nextel Competitor is inapposite to the question of whether Cingular (now AT&T Mobility) is an intended third party beneficiary of the RCR Agreement. NASCAR's admission is simply evidence of its recognition of RCR's right pursuant to the RCR Agreement to continue its current sponsorship, combined with a statement of which logos NASCAR believes RCR is permitted to display pursuant to the RCR Agreement.

The mere fact that RCR has opted to exercise its right to retain Cingular as its sponsor does not convert that option into a "legally protected right" for Cingular or AT&T Mobility under NASCAR's agreement with RCR. RCR's absolute discretion under the RCR Agreement to retain Cingular as its sponsor, and NASCAR's lack of a role in RCR's decision, foreclose the possibility that Cingular or AT&T Mobility is a third party beneficiary of such agreement. It is well settled that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Miccosukee Tribe of Indians of Florida v. Florida State Athletic Com'n*, 226 F.3d 1226, 1230 (11th Cir. 2000) ("Absent exceptional circumstances, a third party does not have standing to challenge injury to another party.").

13

Because Cingular (now AT&T Mobility) was neither a party to nor an intended beneficiary of the RCR Agreement, it has not itself suffered a legally cognizable injury as a result of NASCAR's interpretation of the Addendum to the RCR Agreement. Thus, even though it might benefit collaterally from an interpretation of the RCR Agreement that is inconsistent with NASCAR's position, AT&T Mobility lacks standing to enforce its interpretation of the RCR Agreement.

## III. CONCLUSION

We conclude that under Georgia law AT&T Mobility was not a third party beneficiary of the RCR Agreement executed between NASCAR and RCR and, as a result, AT&T Mobility lacks standing to challenge NASCAR's interpretation of that agreement. Therefore, the district court's preliminary injunction is VACATED and the matter is REMANDED for dismissal.