[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-11743

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 31, 2008
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 05-80107-CV-WPD & 03-32158-BKC-PG

IN RE:  JAMES F. WALKER,

Debtor.

_____

LINDA J. WALDEN,

Plaintiff-Appellant,

versus

JAMES F. WALKER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 31, 2008)**

Before DUBINA and KRAVITCH, Circuit Judges, and COOGLER[*], District Judge.

KRAVITCH, Circuit Judge:

Linda J. Walden ("Walden") appeals the district court's affirmance of the bankruptcy court's removal orders, removing her as trustee in debtor James F. Walker's ("Walker") Chapter 7 bankruptcy proceeding. This appeal presents three issues of first impression in this circuit: (1) whether this Court has jurisdiction over a district court's affirmance of a bankruptcy court's removal of a trustee, (2) whether a Chapter 7 debtor, with no pecuniary interest in the estate, is a "party in interest" that can seek removal of the trustee, and (3) whether a bankruptcy judge can remove a trustee *sua sponte* for lying under oath. For the reasons stated below, we affirm.

## Background

Walker filed for voluntary bankruptcy in April of 2003 claiming total assets of $101.00 and liabilities of $1,095,257.98. In June of that year, the creditors elected Walden to be the trustee. Walden submitted a Verified Statement to Accompany United States Trustee's Report of Disputed Election Under Bankruptcy Rule 2007.1(b)(3)(B) ("Verified Statement") dated June 12, 2003. In

---

[*] Honorable Scott Coogler, United States District Judge for the Northern District of Alabama, sitting by designation.

the Verified Statement, Walden stated that she had no connections with any of the creditors except that she was the receiver in another related matter. The Verified Statement read:

> I, Linda Walden, the undersigned, hereby state the following **under penalty of perjury,** 18 U.S.C. Section 1001, in connection with the pending trustee election in this case:
>
> I have the following connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the party in interest, their respective attorneys and accountants, the United States Trustee for Region 21, and/or any person employed in the Office of the United States Trustee: NONE except as disclosed herein:
>
> 1. I was appointed and currently serve as State Court Receiver for the Creditors in the matter styled Eleanor C. Cole, Plaintiff, v. James F. Walker, Defendant Case No. 89-21462-09 before the Honorable Circuit Court Judge Andrews currently pending and stayed in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County.

(Emphasis added).

On July 9, 2003, the bankruptcy court held a Ratification Hearing. At that hearing, Walker asserted that Walden had a relationship with Carl Shuhi, the president of Florida Caliper Manufacturers ("FCM")[1]— the creditor with the second largest claim in the bankruptcy proceeding— creating a conflict of interest and that Walden was, therefore, disqualified from serving as the trustee. Walden

---

[1] Shuhi owns/manages several business entities in addition to FCM, including Florida Calipers ("FC"), which later changed its name to "Centurion."

denied having any relationship with Shuhi; she testified as follows:

Q: Have you rendered services on Mr. Shuey's (sic) behalf for any of his entities?
A: No. I do not do personal work for Mr. Shuey (sic).
Q: Have you received any money in any form from Mr. Shuey (sic) at any point in time?
A: Mr. Shuey (sic) does not pay me.
Q: Has Mr. Shuey (sic) given you any money at any point in time?
A: Mr. Shuey (sic) has not given me money.
Q: What is your business relationship with Mr. Shuey (sic), none?
A: I do not have a direct business relationship with Mr. Shuey(sic), other than the fact that he is a creditor in this particular case, and I have met with Mr. Shuey (sic) to get information in the receivership.
Q: In the receivership, you've met with Mr. Sheuy (sic) to get information in the receivership. Under the receivership order, aren't you the fiduciary of Eleanor C. Cole?
A: I am the fiduciary of—I was appointed the receiver for Ms. Cole and the creditors.
Q: So when you say you don't have any direct business relationship with Mr. Shuey (sic), do you have some indirect business relationship?
A: As I said, I was the appointee for the creditors.
Q: Do you render any services for any of Mr. Shuey's (sic) business entities?
A: No, I believe I answered that question.

Walden was then ratified as the trustee. On August 23, 2004, Walker filed an Emergency Motion to Remove the Trustee. He alleged that Walden had a conflict of interest and had lied about it on the Verified Statement and at the July 9, 2004 Ratification Hearing. Specifically, Walker alleged that Walden had performed accounting services for Shuhi and/or his corporate entities, that she had prepared an expert report for Shuhi in a state court action in 2000, and that she

4

served as Registered Agent for two of Shuhi's business entities.

At a hearing on the motion to remove, the following evidence was presented:

Several years prior to the bankruptcy, Shuhi sued the Simon law firm in state court. Utrecht, Shuhi's lawyer in that state court action, testified that in representing Shuhi during that case, Shuhi told Utrecht that Walden would be the expert in the litigation. Utrecht testified that he spoke with Walden and met with her several times for this purpose. Moreover, Elaine Gatsos, an attorney for Shuhi, testified that she became one of Shuhi's attorneys following Walden's referral and introduction in 1999. Gatsos testified that she met with both Walden and Shuhi in February of 1999 for the initial client meeting at Shuhi's office. Further, Gatsos testified that several times after the initial Gatsos-Walden-Shuhi meeting, Walden indicated that she was filling out answers to expert interrogatories related to the state court action handled by Utrecht.

Particularly damaging to Walden were Shuhi's depositions taken in 1999. In two depositions from that year, Shuhi testified that Walden was the expert in the case and that Walden was both FCM's accountant and Shuhi's personal accountant. On June 28, 1999, Shuhi had testified as follows:

> Q [Defense counsel]: Does Florida Caliper Manufacturers file
> corporate tax returns?
> A: Yes.
> Q: Who files the tax returns, or who prepares them?

5

A: CPA.
Q: What's the name of the present CPA?
A: Linda Walden.
Q: W-A-L-D-E-N?
A: I believe so.
...
Q: Do you file personal tax returns every year?
A: Yes.  My CPA does the work.
Q: Who is your personal CPA?
A: Linda Walden.
...
Q: Do you have a total for the amount of damages that you claimed have resulted from these matters involving the same subject matter being pursued separately?
A: I'd have to refer that to my accountant.
Q: And who is your accountant for this purpose?
A: Linda Walden.
Q: Has Ms. Walden been retained at this point to provide any testimony or calculate any damages with regard to this litigation?
A: Yes.

Also, at an August 25, 1999 deposition Shuhi had been asked about damages in the case.  Shuhi stated that he could not from his memory discuss the specifics of his basis for damages but referred counsel to his accountant, Linda Walden.

Additionally, Walker introduced a plethora of other evidence indicating that Walden and Shuhi had a pre-existing relationship prior to Walden's submission of the Verified Statement and her oral testimony at the Removal Hearing.  This evidence included (1) court documents from the state court action filed with the court in 2000 stating that Shuhi's entities were invoking the accountant-client privilege with respect to documents requested of Walden; (2) documents filed with

6

the Florida Secretary of State in 2001 indicating that Walden was FC's Registered

Agent; and (3) documents identifying Walden as the Registered Agent of

Centurion. Walden was still Centurion's Registered Agent on July 9, 2004—the

day of the Ratification Hearing in which she testified that she had no business

relationship with Shuhi or any of his entities.

Walden maintained that she had no relationship with Shuhi prior to 2002

when she became the receiver in the Walker bankruptcy. She testified:

> Q [Appellee's counsel]: Have you ever been employed—have you
> ever been an employee of Carl Shuhi or any of his entities?
> A: No, I have never been an employee of Carl Shuhi or any of his
> entities.
> Q: Have you ever worked for Carl Shuhi or any of his entities?
> A: I have never worked for Carl Shuhi or any of his entities.
> Q: You previously testified that you have never been retained by Carl
> Shuhi or any of his entities: is that correct?
> A: I do not know if that was my testimony; however, I have not been
> retained by Carl Shuhi or any of his entities.
> Q: And you have never rendered any services, as I suppose is both
> your testimony and Carl Shuhi's testimony as of October 8th for Carl
> Shuhi or any of his entities, correct?
> A: As of October 8th, I have never rendered any services of Carl
> Shuhi.
> Q: Or any of his entities?
> A: Or any of his entities.

On November 17, 2004, after five days of hearings on the motion to remove,

the bankruptcy judge found that Walden failed to disclose connections she had

with Shuhi and that she lied about these connections both on the Verified

7

Statement and during oral testimony before the court. The judge granted the motion to remove orally and requested Walker's attorney to prepare the written order. Concerned about a potentially long delay between the November 17 hearing and the entry of the formal removal order containing findings of fact and conclusions of law, the United States Trustee—Ms. Heffner—asked for a brief written order removing Walden so that a new trustee could be appointed. The judge issued the one-page order ("Removal Order I"). Walden then filed her notice of appeal, and on December 1, 2004 the judge entered the findings of fact and conclusions of law ("Removal Order II") and Final Judgment.

In both the order granting the motion orally and the written Removal Order II, the bankruptcy judge found that Walden had lied on the Verified Statement when she indicated that she had no connections with any creditors and that she further lied to the court about both (1) whether she acted as an expert witness and accountant for Shuhi and/or his entities in a state court action several years prior to the bankruptcy proceeding wherein Shuhi's entities sued the Simon law firm, and (2) whether she was a Registered Agent for entities owned and controlled by Shuhi in 2001 and after.

Walden then appealed to the district court, which affirmed the bankruptcy court's orders.

On appeal to this Court, Walden contends that (1) the bankruptcy court lacked jurisdiction to enter Removal Order II and Final Judgment because Walden already had filed an appeal of Removal Order I, thus stripping the bankruptcy court of jurisdiction; (2) Walker—as a Chapter 7 debtor with no pecuniary interest in the estate—lacked standing as a "party in interest" to seek removal of the trustee[2]; (3) there was insufficient legal cause to remove the trustee; and (4) the bankruptcy court erred by violating Walden's Due Process rights.

We will address these issues in turn. But first, we must examine whether this Court has jurisdiction over an appeal of the district court's affirmance of the bankruptcy court's removal orders.

## Discussion

## 1. Jurisdiction over Appeal of District Court's Affirmance of Removal Orders

Although neither party submitted briefs on the issue, it is a duty of this Court to determine whether it has jurisdiction over a particular matter, even if doing so raises the issue *sua sponte*. Finn v. Prudential-Bache Sec., Inc., 821 F.2d 581, 585 (11th Cir. 1987). We review jurisdictional issues *de novo*. AT&T Mobility, LLC

---

[2] Although when Walker filed for bankruptcy his listed liabilities greatly exceeded assets, valuable real estate in the Bahamas has now been added to the list of assets and it appears as though the assets now exceed liabilities. The question on appeal, however, is whether Walker had standing *at the time* he moved for Walden's removal. See Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1275 (11th Cir. 2003) (standing is measured from time complaint was filed). Therefore, our analysis must ignore the subsequent changes to the value of the estate.

9

v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1360 (11th Cir. 2007).

A court of appeals has jurisdiction over only final judgments and orders arising from a bankruptcy proceeding, whereas the district court may review interlocutory judgments and orders as well. Lockwood v. Snookies, 60 F.3d 724, 725 (11th Cir. 1995). Whether this Court has jurisdiction over the Removal Orders, therefore, depends upon whether they are "final."[3] Id. Whether the removal of a trustee is a "final" order is an issue of first impression in this circuit.

Generally speaking, a final decision is one "which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233 (1945). The purpose of this requirement is to avoid the waste of judicial resources and the delay inherent in piecemeal litigation. This Court has held, however, that appellate jurisdiction must be flexible enough to handle the practicalities of complex litigation. See In re Martin Bros. Toolmakers, Inc., 796 F.2d 1435, 1437 (11th Cir. 1986). In the bankruptcy context, this Court has concluded that "it is generally the particular adversary proceeding or controversy that must have been finally resolved rather than the entire bankruptcy litigation." Commodore Holdings, Inc. v. Exxon Mobil Corp., 331 F.3d 1257, 1259

---

[3] There are exceptions to the finality requirement, but none of them are relevant here. See Lockwood, 60 F.3d at 726.

(11th Cir. 2003).

Other appellate courts are split as to whether the removal or appointment of a trustee is a "final" order.[4]  The Third and Fourth Circuits hold that these decisions are final, but the Seventh Circuit disagrees.  The Fifth Circuit has concluded both ways.[5]

In In re Marvel, the Third Circuit concluded that the order appointing the trustee met the finality requirement.  In re Marvel Entm't Group, Inc., 140 F.3d 463, 470-71 (3rd Cir. 1998).  In that case, the court wrote that the purpose of the finality requirement is judicial economy but that judicial efficiency would be "turned on its head" if the court were to delay reviewing the trustee appointment until after the entire bankruptcy proceeding concluded.  Id. at 470.  The court noted that "[l]iberal finality considerations in orders appointing bankruptcy trustees are necessary because these orders cannot be meaningfully postponed to the

---

[4]  Although this case is about the removal of a trustee, the appointment of a trustee presents the same "finality" issue.  Because both involve the identity of the trustee, the finality analysis is the same for both situations.

[5]  See In re Marvel Entmt Group, Inc., 140 F.3d 463, 470-471 (3rd Cir. 1998) (appointment of trustee is "final") ;  In re Cajun Elec. Power Coop., Inc., 69 F.3d 746, 748 (5th Cir. 1995) (same); In re BH & P, Inc., 949 F.2d 1300, 1307 (3rd Cir. 1991) (removal order is "final"); Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc., 828 F.2d 239, 241 (4th Cir. 1987) (order denying request for appointment of trustee is "final"); Turshen v. Chapman, 823 F.2d 836, 839 (4th Cir. 1987) (removal order is "final" for purposes of collateral estoppel); but see In re Delta Servs. Indus., ETC. v. Foster Sec., Inc., 782 F.2d 1267 (5th Cir. 1986) (appointment of trustee is not "final"); Cash Currency Exch., Inc. v. Shine, 762 F.2d 542, 546 (7th Cir. 1985) (same).

11

bankruptcy's conclusion." Id. The court wrote that if it did not have jurisdiction "no meaningful review of the order appointing the trustee could ever take place." Id. It would "strain[] credulity to suggest that a reviewing court would jettison years of bankruptcy infighting, compromise[,] and final determinations solely for the purpose of reversing" on the issue of the identity of the trustee. Id.

We are persuaded by the logic of the Third Circuit and conclude that the removal of a bankruptcy trustee is a "final" order appealable to this Court.

**2. Jurisdiction to enter Removal Order II and Final Judgment**

Walden argues that the bankruptcy court did not have jurisdiction to enter Removal Order II and the Final Judgment because the judge did not enter these orders until several days after Walden filed her notice of appeal of Removal Order I. She argues that once she filed her notice of appeal, the bankruptcy court was divested of jurisdiction with respect to any matters involved in the appeal.

The filing of a proper notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the appellate court and divests the trial court of its control over those aspects of the case involved in the appeal. Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982). But as recently as August of last year, this Court has recognized an exception to this rule. See In re Mosley, 494 F.3d 1320, 1328 (11th Cir. 2007).

12

In In re Mosley, the debtor sought discharge of his student loan debts. The bankruptcy court issued its findings orally and entered a brief written order discharging the debts. Id. at 1324. The creditor then filed an appeal to the district court. Subsequently, the bankruptcy court issued a supplemental order in which it restated its findings and rationale and cited relevant case law. Id. The district court affirmed the bankruptcy court's order. This Court concluded that while the filing of a notice of appeal generally "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," an exception exists. Id. at 1328 (quoting Griggs, 459 U.S. at 58). We concluded that when a trial court reduces its oral findings to writing and cites relevant case law, it does not lack jurisdiction to do so because the losing party filed a notice of appeal after the oral hearing but before the entry of the written order. Id. Such a subsequent order aids appellate review. Accordingly, we conclude that the bankruptcy court had jurisdiction to enter Removal Order II and the Final Judgment.[6]

---

[6] Moreover, it is not clear why Removal Order II is significant for the appellant. Even if this Court were to conclude that the bankruptcy court lacked jurisdiction to enter Removal Order II, Federal Rule of Civil Procedure 52 (which applies in this case via Federal Rules of Bankruptcy Procedure §§ 9014, 7052) states that the findings of fact and conclusions of law may be entered orally. Thus, the oral findings of fact and conclusions of law would still stand and Walden would be removed for the same reasons.

13

**3. Standing to Remove the Trustee**

Walden next contends that Walker lacked standing to request her removal as trustee because he did not allege or prove that he had any pecuniary interest in the estate. She argues that because the bankruptcy proceeding dealt with a single asset liquidation and the claims against the estate far exceeded its value (liabilities of over $1 million compared to assets of $101), Walker lacked standing and, therefore, the bankruptcy court lacked jurisdiction.

Courts generally have held that to have standing in a bankruptcy proceeding, the party must be a "party in interest." See In re Westwood Community Two Ass'n, Inc., 293 F.3d 1332, 1337 (11th Cir. 2002) (any "party in interest" has a right to be heard in a Chapter 7 bankruptcy proceeding). But whether a debtor lacking a pecuniary interest in the estate qualifies as a "party in interest" is an issue of first impression in this circuit. Because, however, we conclude that the bankruptcy judge may *sua sponte* remove the trustee for lying under oath, we need not address the question.

The statute governing the removal of a trustee does not require that a "party in interest" request the removal. 11 U.S.C § 324. It reads, "The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." Id. The statute's language does not restrict the court's

14

ability to remove a trustee to only those instances in which specific parties move for removal.  See Morgan v. Cast, 375 B.R. 838, 848 (BAP 8th Cir. 2007) (concluding that lying under oath provides cause for *sua sponte* removal).  We conclude that § 324 authorizes the bankruptcy judge to remove the trustee *sua sponte* when, after notice and a hearing, the judge finds that the trustee had lied under oath.

**4. Sufficient Legal Cause to Warrant Removal**

Walden asserts that insufficient legal cause existed for removal.  First, she states that there was insufficient evidence for the judge to conclude that she perjured herself.  Second, she contends that insufficient evidence existed because all the elements of criminal perjury were not proven.  She further claims that she did not need to submit a verified statement as to whether she had any connections with the creditors and, therefore, she had no duty to be truthful.  Finally, she argues that just as there was evidence to support a finding that she lied, there was also evidence that she did not lie.

We review factual determinations of truthfulness under the clearly erroneous standard.[7]  In re Fretz, 244 F.3d 1323, 1326 (11th Cir. 2001).  Factual findings are

_____

[7] Walden argues that because Removal Order II was adopted almost verbatim from Walker's proposed order that we should adopt a more stringent standard of review.  We decline to do so.  See Anderson v. City of Bessemer, 470 U.S. 564, 572 (1985) (specifically rejecting Walden's argument); Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1373 n.46 (11th Cir.

15

not clearly erroneous unless we are left with "the definite and firm conviction" that the court erred.  <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573 (1985).

After a thorough review of the record, we conclude that sufficient evidence existed to remove the trustee.  The bankruptcy judge found that Walden's testimony was contradictory and false.  After reading the record, we see no reason to believe otherwise.  Ample evidence exists to support the judge's finding.

Further, Walden's arguments pertaining to the elements of criminal perjury miss the point.  She was not *convicted* of *criminal* perjury.  The bankruptcy judge found that Walden lied.  Walden's contentions, therefore, regarding whether the elements of criminal perjury were proven are irrelevant.

Walden also asserts that because she was not *required* to submit a verified statement, the fact that she lied in that statement should not be held against her.  The idea that false testimony when offered to the court voluntarily is immune to the consequences of lying under oath is absurd.  Lying under oath is lying under oath.  It does not matter if the false statement is voluntary.[8]

The fact that evidence was presented supporting both sides does not matter, either.  In making factual findings, the trial judge resolves evidentiary conflicts.

1997).

[8] We need not address whether Walden's verified statement was voluntary or required.

16

<u>Lykes Bros., Inc. v. U.S. Army Corps of Engineers</u>, 64 F.3d 630, 636 (11th Cir. 1995).  Walden fails to show clear error.

## 5. Due Process Violation

Walden claims that the bankruptcy court violated her due process rights because the bankruptcy judge improperly admitted rebuttal testimony.  She asserts that some of the evidence that Walker presented at the removal hearing was not rebuttal testimony and, instead, was testimony that should have been put on in the case-in-chief.  Walden further contends that the bankruptcy judge improperly found that a cover page on a defense exhibit—the authenticity of which was disputed—was not an authentic cover page and that, by making this finding, the judge acted as an adverse witness in violation of Walden's due process rights.

After a through review of the record, we find these arguments without merit. We review the admittance of evidence under an abuse of discretion standard.  <u>U.S. v. Brown</u>, 415 F.3d 1257, 1264 (11th Cir. 2005).  The decision to admit rebuttal evidence is within the sound discretion of the trial judge.  <u>Id.</u> at 1265.  The trial judge is in the best position to decide the matter and it will only be reversed if there is a clear error of judgment.  <u>Id.</u>  We see no clear error.

Further, Walden misconstrues the facts and law as to the cover page.  One of the responsibilities of a trial judge is to make factual findings based upon the

evidence.  See Dorsey v. Cont'l Cas. Co., 730 F.2d 675, 679-680 (11th Cir. 1984).

Here, the judge made a factual finding based upon the evidence.  He did not act as

a witness.  We review factual findings for clear error and we see none here.  See

Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

## Conclusion

For the reasons stated above, we **AFFIRM.**