[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10454
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 15, 2010
JOHN LEY
CLERK

D. C. Docket No. 1:08-cv-22268-WMH

CONTENDER FISHING TEAM, LLC,
as owner of the vessel FL30221NR,

Plaintiff-Counter Defendant-
Counter Claimant-Appellee,

versus

CITY OF MIAMI,

Defendant-Third Party
Plaintiff–Counter Claimant-
Counter Defendant-Appellant,

COREY FRITZLER, COLLAN MEATHE,

Defendants-Third Party
Defendants-Appellees,

NORTHERN ASSURANCE COMPANY OF AMERICA,

Defendant-Third Party
Defendant-Cross-Defendant-
Appellee,

RICHARD S. SOL,

Third Party Defendant-Counter Claimant-Cross Claimant-Appellee,

SCOTT A. ELLSWORTH,

Third Party Defendant-Counter-Claimant Appellee,

OBEL LINARES HERNANDEZ,

Third Party Defendant-Appellee.

JOHN P. OBEID,                                          Third Party Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 15, 2010)

Before DUBINA, Chief Judge, BLACK, Circuit Judge, and GOLDBERG,[*] Judge.

PER CURIAM:

Appellant City of Miami (the "City") appeals the district court's grant of

partial summary judgment in favor of Appellee Northern Assurance Company of

_____

[*]Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

2

America (the "Insurer"), arguing that the district court erred when it determined that the Marina Operators Legal Liability Policy (the "Policy") held by the City did not cover an accident involving one of the City's police boats. The action arises out of a collision between two vessels in Biscayne Bay in the vicinity of Coconut Grove. One of the vessels involved in the collision was owned by the City and operated by Police Officer Jose R. Estevez. The other vessel, a Contender, was owned by Contender Fishing Team, LLC. As a result of the collision between the two vessels, Richard S. Sol was injured. He filed a complaint against the City and others in the United States District Court for the Southern District of Florida to recover damages for his alleged bodily injuries arising out of the collision.

After the briefs were filed in this appeal, the court raised *sua sponte*, the question of whether we have jurisdiction over this interlocutory appeal.

There are two issues presented in this appeal: (1) whether we have subject matter jurisdiction; and (2) whether the protection and indemnity section of the Policy covers the City's police boat, thus requiring the Insurer to defend and indemnify the City against law suits arising from the accident between the police boat and the Contender vessel.

"[I]t is a duty of this court to determine whether it has jurisdiction over a particular matter, even if doing so raises the issue *sua sponte*. We review jurisdictional issues *de novo*." *In re Walker*, 515 F.3d 1204, 1210 (11th Cir. 2008) (citing *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007)).

The interpretation of provisions in an insurance contract is a question of law reviewed *de novo*. *James River Ins. Co. v. Ground Down Eng'g, Inc.,* 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Technical Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998)). "We review *de novo* the district court's grant of a motion for summary judgment." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

## A. **Jurisdiction**

We conclude that the district court's order granting partial summary judgment in favor of the Insurer is appealable under 28 U.S.C. § 1292(a)(3), which permits an immediate appeal of an order determining rights and liabilities in an admiralty case. The claim here is an admiralty claim involving the issue of coverage under a policy of marine insurance. The district court conclusively determined that the Policy did not cover the collision at issue, and that decision

4

clearly determined the City's "right" to seek indemnification from the Insurer in this case. Therefore we conclude that we have jurisdiction.

**B. Summary Judgment**

The City argues that a plain reading of the protection and indemnity section, when read in isolation from the rest of the Policy and the application, provides coverage for the police boat in question because: (1) the police officer is an "employee" of the City; (2) the police officer operated a "watercraft"; and (3) he operated it "in conjunction with normal business operations." The phrase "normal business operations" is not defined in the Policy, but the City argues that a plain reading of this phrase suggests that any business that the City regularly engages in is included. However, applying Florida rules of construction, it is clear that the City's reading is in error. *See All Underwriters v. Weisberg*, 222 F.3d 1309, 1313 (11th Cir. 2000) ("[I]n the absence of a specific and controlling rule, the interpretation or construction of a marine insurance contract is to be determined by state law."); *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321, 75 S. Ct. 368, 374 ("We, like Congress, leave the regulation of marine insurance where it has been – with the States.").

When we read the entire Policy, as amplified by the application,[1] we conclude that the phrase "normal business operations" clearly means "marina operations" and not just any operations in which the City happens to engage. The Policy itself is called "Marina Operators Legal Liability Policy." The introduction states that the Policy is one for "marina owners" and covers "marina operations." The words "marina operations" are referred to repeatedly throughout the entire Policy. When asked to list businesses owned by the City on the renewal application, the City listed "municipal marinas and mooring facility." Under the principle that specific phrases (marina operations) govern general phrases (business operations), clearly the phrase "normal business operations" is restricted to normal marina operations.

Nor can the City legitimately argue that the "watercraft" referred to in the protection and indemnity section encompasses all watercraft owned or operated by the City. First, the declarations pages show that "5 Work Boats" are included under this provision. Second, the City knew that only listed vessels were included, as evidenced by its request to add an additional vessel on its most recent renewal. Moreover, the City chose which subsections of protection and indemnity

---

[1] Though the City argues to the contrary, it is clear that under Florida law the application is part of the insurance contract. Fla. Stat. Ann. § 627.419(1).

to include in its Policy. It could have chosen to cover "other owned boats," or "rental boats," but instead, the City chose only the "work boats" (providing a list of five) and "marina operators" subsections.

We agree with the district court that the City's interpretation that this Policy includes all boats operated by a city employee acting in his or her capacity as a city employee for *all* city business is completely unreasonable. Because we conclude that the Policy in question is unambiguous, we need not reach the issue of whether the City automatically wins under the Florida Rule that ambiguous insurance contracts are construed against the insurer.

For the aforementioned reasons, we affirm the district court's grant of partial summary judgment in favor of the Insurer.

**AFFIRMED.**[2]

---

[2] We DENY the Insurer's motion for attorney's fees.