[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 2, 2012
JOHN LEY
CLERK

No. 11-11916
Non-Argument Calendar

_____

D.C. Docket No. 2:10-cv-00212-JES,
BKCY No. 9:06-bk-05685-ALP


In Re: Bonita B. Phillips, a.k.a. Bonnie B. Phillips,

                                        Debtor.

_____

JEFFREY S. PHILLIPS,

                                        Plaintiff - Appellant,

                    versus

EPIC AVIATION,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 2, 2012)

Before TJOFLAT, EDMONDSON and MARCUS, Circuit Judges.

PER CURIAM:

Appellant-Debtor Jeffery S. Phillips appeals from the district court's order, affirming the bankruptcy court's final judgment in an adversary action brought by Appellee-Creditor, Epic Aviation, Inc. ("Epic"), which denied Phillips a Chapter 7 bankruptcy discharge under 11 U.S.C. § 727(a)(4)(A) for making false oaths in connection with the official schedules and statement of financial affairs ("SOFA") in his bankruptcy case. On appeal, Phillips argues that: (1) the lower courts erred by applying a reckless standard instead of a "knowingly and fraudulently" standard to Phillips's alleged false statements/ omissions in his SOFA; (2) he had no obligation to disclose a $50,000 "undocumented" transaction in the SOFA and no reason to believe he should have; (3) he had no obligation to disclose $23,500 in attorney payments in the SOFA and no reason to believe he should have; and (4) his failure to disclose an "immaterial" interest in a $3,090 security deposit was not fraudulent. After thorough review, we affirm.

We review a bankruptcy court's legal conclusions, as well as mixed questions of law and fact, de novo. In re Piper Aircraft Corp., 244 F.3d 1289, 1295 & n.2 (11th Cir. 2001). We "accept the factual findings of the bankruptcy court unless they are clearly erroneous, particularly when the findings are affirmed by the district court," as in this case. In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984); see Fed. R. Bankr.

2

P. 8013. A fact finding is clearly erroneous if "the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994) (quotation omitted). A bankruptcy court's findings of fact include findings about whether a transfer was made in the ordinary course of a debtor's business, whether a debtor knowingly and fraudulently made a false oath within the meaning of §727(a)(4)(A), and whether a false oath is material. In re Issac Leaseco, Inc., 389 F.3d 1205, 1209 (11th Cir. 2004) ("A determination of ordinary business terms under section 547(c)(2)(C) [preferential transfers] is a question of fact subject to the clearly erroneous standard of review."); In re Wines, 997 F.2d 852, 856-57 (11th Cir. 1993) ("Whether the debtor had the requisite wrongful intent is a question of fact which we review for clear error."); Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991) (concluding that "[t]he district court was not clearly erroneous in holding that the value of the omitted assets was material" for purposes of § 727(a)(4)(A)). "Because a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor, deference to the bankruptcy court's factual findings is particularly appropriate." In re Miller, 39 F.3d 301, 305 (11th Cir. 1994) (quotation omitted).

Under the Bankruptcy Code, a discharge should not be granted if the debtor "knowingly and fraudulently, in or in connection with the case … made a false oath or account." 11 U.S.C. § 727(a)(4)(A); Chalik, 748 F.2d at 618. A party objecting to discharge under § 727(a)(4)(A) must prove by a preponderance of the evidence that "the false oath [was] fraudulent and material." Swicegood, 924 F.2d at 232. An omission from the debtor's SOFA or schedules may constitute false oaths under this provision. Chalik, 748 F.2d at 618 & n.3. If the objecting party brings forward credible evidence establishing these elements, the burden shifts to the debtor to convince the court not to deny discharge based on the objecting party's evidence. In re Prevatt, 261 B.R. 54, 58 (Bankr. M.D. Fla. 2000).

To begin, there is no merit to Phillips's arguments that the bankruptcy court applied the wrong standard to his false statements/omissions. As the record shows, the bankruptcy court expressly said that § 727(a)(4)(A) requires "a finding of actual intent to defraud on the part of the Debtor…. Only deliberate omissions qualify as false oaths justifying denial of discharge." Immediately following that statement, the bankruptcy court stated that, based on the court's observations of Phillips's demeanor and all the circumstances of the case, he "chose to play 'fast and loose' with his disclosure obligations," and that his omissions were "willful." In the very next paragraph, the bankruptcy court stated: "In this case, the facts and circumstances

4

clearly warrant the finding that the Debtor had actual fraudulent intent when he omitted these interests and transfers." Thus, Phillips's argument that the bankruptcy court applied a "willfulness" or "recklessness" standard, or that it failed to make express findings of actual fraudulent intent, ignores the bankruptcy court's clear statement of the law and fact findings under that standard. Moreover, the bankruptcy court's finding that Phillips acted with fraudulent intent in making the omissions was based on its specific fact findings previously made, its observations over the course of a two-day trial, and all of the circumstances of the case. There is no basis to conclude that Phillips' discharge was denied based solely on the bankruptcy court's findings that Phillips played "fast and loose."[1]

---

[1] The bankruptcy court also did not abuse its discretion in admitting evidence of Phillips's conduct in relation to the bankruptcy cases and all the surrounding circumstances in determining that the omissions were made with fraudulent intent, even if such conduct itself did not did not form an independent basis for denial of discharge. Phillips contends that, because the district court concluded that Epic's claims based on corporate transfers and entertainment expenses could not, procedurally, result in the denial of Phillips' discharge, "only three alleged false oaths remain" and thus "there were not 'several' transfers." The bankruptcy court admitted evidence of various incidents which independently were not grounds supporting the denial of Phillips's discharge, but instead, were admitted for the purpose of proving the other counts pleaded in Epic's complaint. However, given the bankruptcy judge's discretion in admitting evidence, In re Walker, 515 F.3d 1204, 1208 (11th Cir. 2008), evidence of these "other" incidents was properly admitted and the bankruptcy court was entitled to consider the facts established by that evidence as they related to Phillips's overall conduct in connection with the bankruptcies and credibility. A bankruptcy court is entitled to "look to the totality of the circumstances, including the recklessness of a debtor's behavior, to infer whether a debtor submitted a statement with intent to deceive." Miller, 39 F.3d at 305. Indeed, because debtors generally will not testify as to their own misconduct, that a false oath was made knowingly and fraudulently is generally proven by circumstantial evidence or inferences drawn from circumstances surrounding the debtor. In re Bosse, 200 B.R. 419, 421 (Bankr. S.D. Fla. 1996) (citing In re Sausser, 159 B.R. 352, 356 (Bankr. M.D. Fla.1993)).

Next, we reject Phillips's claim that he was not required to disclose an "undocumented" transfer in his SOFA. Question 10 of the SOFA required Phillips to: "List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." It is undisputed that Phillips had paid $100,000 somehow related to something known as the "Englewood Project," that within two years before Phillips filed his petition, Christopher Cioffi bought him out of his interest for $50,000, and that the transaction was not in the ordinary course of Phillips's business. That this transaction was "undocumented" does not exempt Phillips from listing it, nor does he provide any authority on that point.

As for Phillips's claim that he had no reason to believe that he should have disclosed the Cioffi transaction in the SOFA, we are unpersuaded. For starters, Phillips does not dispute the bankruptcy court's finding that he is a "sophisticated, educated businessperson," who was the principal of numerous corporate entities, and has "owned and invested in several multimillion-dollar jet planes." In addition, the record shows that the Cioffi transaction occurred approximately four months before Phillips filed his petition and only one month before his former attorney began preparing his bankruptcy schedules. Thus, the transaction had recently occurred at

6

the time Phillips signed his SOFA, it gave Phillips $50,000 at a time he was financially troubled, and he suffered a significant loss on his original investment of $100,000. On this record, the bankruptcy court did not clearly err in finding that a "sophisticated, educated businessperson" like Phillips knew that he had some sort of interest in the real estate due to his payment of $100,000, and that he transferred that interest to Cioffi in exchange for $50,000.[2]

Phillips argues that the transaction was disclosed to the trustee before the Section 341 meeting of creditors. The bankruptcy court determined that Phillips failed to establish when he disclosed the Cioffi transaction to the trustee. As the record shows, it is undisputed that this transaction was not listed in his SOFA, and that this transaction, as Phillips admits, was "undocumented." Moreover, while the trustee testified that she did not know when she discovered the transaction, she also testified that she discovered the Cioffi transaction in her investigation. Phillips's self-serving testimony that he gave the trustee information about the transaction before the creditor's meeting is unpersuasive -- not only does it not specify what information he gave the trustee, but the trier of fact is permitted to disbelieve a

_____

[2] As a result, because Phillips did in fact receive payment arising out of this "undocumented" transaction, it is different from the "handshake" deal in In re Berris, 458 B.R. 601, 610 (Bkrtcy.S.D.Fla.,2011), where the debtor was not found to have a property interest after "firmly establish[ing] that there was no equity in the properties in which he may have had a 'handshake deal' to share in any potential profits upon sale thereof."

witness and find that his demeanor and credibility suggested the opposite of what he testified. United States v. Deverso, 518 F.3d 1250, 1258 (11th Cir. 2008)). Therefore, the bankruptcy court was not clearly erroneous in determining that Phillips knowingly and fraudulently disregarded his interest and disclosure obligation.

We also find no merit to Phillips's claim that he was not required to disclose $23,500 in payments to attorneys because, he says, they were made in the ordinary course of his financial affairs. The bankruptcy court described the payments as follows:

> Phillips paid $5,000 to the law firm of Grimes Goebel to represent him in an appeal, $10,000 to the attorney Mark Hildreth to represent him in litigation related to the Center case, $5,000 to the law firm of Allen, Kuehnle & Stovall to represent him in a case regarding a deficiency on an airplane, $3,500 to the attorney Brian Zinn to represent him in an adversary proceeding related to the Center case, and an unestablished amount to Len Thornton to represent him in another adversary proceeding related to the Center case.[3]

On these facts, the bankruptcy court concluded that the payments were made "outside the ordinary course of business," because Phillips's "business was the charter air business, not litigation."[4] Phillips does not explain how his personal payments to

---

[3] The "Center case" involves the bankruptcy proceedings of Jet 1 Center, Inc., a company in which Phillips was the principal.

[4] Although the bankruptcy court's express language was that the transfer was outside of the ordinary course of his "business," its failure to include the words, "financial affairs," is inconsequential. See Matter of Texas Mortg. Servs. Corp., 761 F.2d 1068, 1075 n.12 (5th Cir. 1985) ("If a trial judge fails to make a specific finding on a particular fact, the reviewing court

attorneys for the bankruptcy proceedings of another entity, which was a private jet services company, are payments in the "ordinary course of his financial affairs."[5] Therefore, there is no clear error in the court's finding that his payments to attorneys were not in the ordinary course.

Moreover, that Phillips knew he was obligated to disclose payments to attorneys in Question 10 is shown by the fact that he actually did disclose a payment to another attorney in Question 10. In light of the disclosure of that one payment in Question 10 and the bankruptcy court's assessment of his credibility, sophistication, demeanor, candor, and the circumstances of the case, the bankruptcy court's finding that he knowingly and intentionally failed to disclose the attorney payments was not clearly erroneous.

Finally, we are unpersuaded by Phillips's claim that his failure to disclose an "immaterial" interest in a $3,090 security deposit was not fraudulent. Phillips does not dispute that he was required to disclose the commercial lease and security deposit

_____

may assume that the court impliedly made a finding consistent with his general holding so long as the implied finding is supported by the evidence.") (citing Clinkenbeard v. Central S.W. Oil Corp., 526 F.2d 649, 651-52 (5th Cir. 1976)); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981).

[5] Indeed, in the Bankruptcy Code's preferential treatment provisions, "[t]he purpose of the ordinary course of business defense is to leave undisturbed normal financial relations, which enables the struggling debtor to continue operating its business." Issac Leaseco, 389 F.3d at 1210 (citation and quotation omitted; emphasis added).

and offers no excuse as to why he failed to meet that obligation; instead, he argues that his failure to disclose it was not fraudulent. The record is clear that the lease was between the landlord and Phillips individually, and that Phillips paid the first month's rent and security deposit from his personal funds. In addition, the record shows that Phillips's testimony about the security deposit changed over time -- he initially testified that the security deposit was paid by one of his companies, then changed his story to say that it was paid by a different company, then reviewed the records of his personal bank account showing that he paid and said he was reimbursed. However, Phillips could not recall who, how, or when the alleged reimbursement took place. Nor could he produce documentation of the reimbursement. Given his shifting testimony specifically relating to this omission, together with the totality of his conduct with respect to his other basic disclosure obligations, the bankruptcy court's finding that he acted knowingly and fraudulently is not clearly erroneous.

Furthermore, despite Phillips's suggestion to the contrary, this omission was material. An omission is material for purposes of § 727(a)(4)(A) "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." Chalik, 748 F.2d at 618. If an omission meets this standard, it is irrelevant that the omission concerned worthless assets or did not injure any creditor. Id. A

10

materiality standard based on an omitted item's relative value to the amount of assets and liabilities at issue in the case would encourage debtors to pick and choose which information to disclose based on the debtor's own assessment of value or significance to the bankruptcy administration. Because that would frustrate the policy of full disclosure, "[c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them." Id.

Phillips has not shown that the bankruptcy court's finding of materiality was clearly erroneous. The record supports that this was not an excusable, isolated, de minimus omission. As shown from the trustee's testimony, Phillip's non-disclosure of the security deposit and commercial lease impaired her investigation and valuation of assets, and was part of a general lack of candor that interfered with her evaluation of the substantial number of transfers at issue in this case. Accordingly, we affirm.

**AFFIRMED.**