345 So.2d 721 (1977)
M. David SIMS, M.D., Petitioner,
v.
Mildred L. HELMS and Cecil J. Helms, Respondents.
No. 49393.
Supreme Court of Florida.
March 31, 1977.
Rehearing Denied May 31, 1977.
*722 Edward J. Atkins and George W. Chesrow, Walton, Lantaff, Schroeder & Carson, Miami, for petitioner.
Leo Greenfield, North Miami, for respondents.
HATCHETT, Justice.
This cause is before us on petition for writ of certiorari to review a decision of the Third District Court of Appeal, reported at 330 So.2d 71. That decision directly conflicts with O'Grady v. Wickman, 213 So.2d 321 (Fla. 4th DCA 1968). We have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution. We reverse.
Respondents, Mr. and Mrs. Helms, were the plaintiffs in a medical malpractice action against the petitioner. Mrs. Helms originally consulted the petitioner, a specialist in gynecology, for the purpose of securing treatment for a prolapsed uterus. Upon his recommendation, she consented to a vaginal hysterectomy. During the operation petitioner inadvertently entered respondent's bladder while attempting to separate it from the uterus. A urologist was consulted, and the incision was surgically repaired by the petitioner. Ten days following respondent's discharge, during a post-operative examination, petitioner observed a small leak through a vesico-vaginal fistula in the bladder. He referred the respondent to a urologist, and a second operation was performed to close the fistula.
Respondents filed suit, asserting that petitioner's conduct in performing the hysterectomy fell below the standard of care required of physicians practicing in the community. More specifically, respondents claimed that petitioner negligently entered and repaired respondent's bladder. Petitioner denied that the operation was negligently performed and submitted depositions and affidavits establishing that the injury sustained by the respondent is one of the ordinary risks involved in hysterectomy surgery. Respondents produced no expert medical testimony to support their allegations of negligence.[*] Based upon an affirmative *723 showing that respondents were without ability to produce such testimony, the trial judge entered a final summary judgment in favor of the petitioner.
On appeal, respondent argued, "that regardless of her inability to produce expert testimony of acceptable medical practice, a jury could find from the application of common knowledge that her bladder was needlessly pierced." Helms v. Sims, supra. Petitioner maintained that expert medical testimony was required to prove the alleged negligence and that the trial court properly entered a summary judgment based on plaintiff's inability to produce such testimony. The District Court ruled in favor of the respondents and reversed the order for summary judgment, basing its decision on this court's opinion in Atkins v. Humes, 110 So.2d 663 (Fla. 1959). In that case we dealt with a situation where a physician applied a cast to a child's arm so tightly that the child's hand became swollen, cold, and discolored. Although notified of these conditions by the child's parents, the physician failed to take any action to relieve the pressure and the child contracted Volkmans's contracture. The child and her parents sued the doctor for medical malpractice but produced no expert testimony to prove that he had acted negligently. The trial court entered a summary judgment in favor of the doctor, and the District Court affirmed on appeal. We reversed and held:
[J]urors of ordinary intelligence, sense and judgment are, in many cases, capable of reaching a conclusion, without the aid of expert testimony, in a malpractice case involving a charge of negligence in the application or administration of an approved medical treatment... . Atkins v. Humes, supra, at p. 666.
But, we also held that where the method of treatment is challenged, expert testimony is required. In explaining the need for such testimony, we pointed out:
[E]xcept in rare cases, neither the court nor the jury can or should be permitted to decide, arbitrarily, what is or is not a proper diagnosis or an acceptable method of treatment of a human ailment.. . Atkins v. Humes, supra, at p. 666.
The present case does not involve a charge of negligence based on the careless administration of an approved medical treatment. Respondent challenges instead petitioner's choice of methods and procedure. In performing a hysterectomy, it is necessary to separate the uterus from the bladder. This can usually be accomplished by the use of a blunt instrument, often the fingers. In respondent's case, the bladder and uterus were joined by multiple adhesions and petitioner determined that sharp dissection was necessary. It was during this procedure that respondent's bladder was inadvertently entered. According to the decision below, the issues are whether petitioner "properly proceeded" in an "emergency situation" to separate the uterus and the bladder by use of a sharp instrument and whether he "properly proceeded" to repair a puncture to the bladder. Helms v. Sims, supra. We are convinced that without the assistance of expert medical testimony a lay jury could not have determined, except by pure speculation, whether petitioner chose the correct method of treatment or whether he deviated from accepted medical practice. Negligence cannot be inferred from the fact that the surgery was unsuccessful or terminated in unfortunate results. Bourgeois v. Dade County, 99 So.2d 575 (Fla. 1957); Hill v. Boughton, 146 Fla. 505, 1 So.2d 610 (1941); Anderson v. Gordon, 334 So.2d 107 (Fla. 3d DCA 1976).
In O'Grady v. Wickman, supra, two doctors were sued for essentially the same act with which petitioner is charged. During a hysterectomy operation the patient's bladder was inadvertently entered. The bladder was repaired, and the patient was discharged from the hospital. A small leak developed, and a second operation was performed to remedy the damage. During the second operation, several silk sutures were discovered at the site of the fistula and were removed in order to stop the leak. The court held that the plaintiff was required to produce expert medical testimony to determine what skills, means, and methods *724 were recognized as necessary by physicians practicing in the community. The overwhelming weight of authority supports this view. Dazet v. Bass, 254 So.2d 183 (Miss. 1971); Halligan v. Cotton, 193 Neb. 331, 227 N.W.2d 10 (1975); Shoberg v. Kelly, 1 Wash. App. 673, 463 P.2d 280 (1969); Odum v. Cejas, 510 S.W.2d 218 (Mo. App. 1974); Riedisser v. Nelson, 111 Ariz. 542, 534 P.2d 1052 (1975).
The only question remaining is whether the trial judge properly entered a summary judgment for the petitioner based on an affirmative showing that respondent was without ability to produce expert medical testimony in support of her allegations of negligence. This issue is resolved by our decision in Holl v. Talcott, 191 So.2d 40 (Fla. 1966), where we held that a defendant may show the absence of genuine issues of material fact by "showing conclusively that the plaintiff is unable to present requisite proof of the negligence charged in the pleadings." Id. at 47.
Accordingly, the decision of the Third District Court of Appeal is quashed and the order of the trial court reinstated.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND and SUNDBERG, JJ., concur.
NOTES
[*] Initially, respondent claimed that she had obtained the opinions of two physicians who stated that Dr. Sims had negligently performed the surgery. Both doctors submitted affidavits denying that they had expressed such opinions. In fact, both doctors specifically stated that a vesico-vaginal fistula is a recognized hazard of all hysterectomies and may occur without any negligence, even when the surgery is performed under ideal conditions, by the most skillful surgeon. Respondent later admitted that neither doctor had actually told her that Dr. Sims was negligent. Supplemental answers to interrogatories, filed by the respondent, indicate that she overheard a conversation between the two doctors from which she inferred that petitioner was negligent.