[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14400
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-00350-HES-JBT


ANDREA J. CAGLE,
as Personal Representative of the
Estate of Raymond W. Cagle Jr.,
Deceased,

                                                    Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 8, 2018)

Before MARTIN, JILL PRYOR, and NEWSOM, Circuit Judges.

PER CURIAM:

Andrea J. Cagle, proceeding *pro se*, appeals the district court's order granting summary judgment in favor of the government and dismissing her complaint. She also appeals the district court's orders denying her motions to impose sanctions against the government, compel discovery, and appoint counsel. We first address Cagle's motions, and then proceed to the court's summary-judgment decision. Finding that the district court appropriately denied Cagle's motions and, because Cagle failed to meet the requirements of Florida law, that the court did not err in granting the government summary judgment, we affirm.

## I

We have an obligation to satisfy ourselves of our own jurisdiction and may raise the issue *sua sponte*. *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007). We review jurisdictional issues *de novo*. *Id.* We review a district court's decision to deny sanctions for abuse of discretion. *See Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (addressing sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the court's inherent power). We will not consider issues that were not before the district court, subject to certain exceptions not relevant here. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331-32 (11th Cir. 2004).

As a general rule, we have jurisdiction only over judgments or orders that are specified in the notice of appeal. *Osterneck v. E.T. Barwick Indus., Inc.*, 825

F.2d 1521, 1528 (11th Cir. 1987). We will allow appeals from orders not specified in the notice of appeal, however, so long as the omitted order was entered "prior to or contemporaneously with" the orders specified in the notice of appeal. *McDougald v. Jenson*, 786 F.2d 1465, 1474 (11th Cir. 1986).

Here, the only order specified in Cagle's notice of appeal is the final judgment. Because the final judgment was entered on August 4, 2017, while the order denying Cagle's motion for sanctions was entered on August 24, 2017, the latter order was not entered "prior to or contemporaneously with" the final judgment specified in Cagle's notice of appeal. *See McDougald*, 786 F.2d at 1474. Accordingly, this Court does not have jurisdiction to review the order denying Cagle's motion for sanctions. Moreover, although Cagle now argues that she was deprived of a proper mediation due to the mediator's conduct, she did not clearly present that issue to the district court. Because the issue of the mediator's conduct was not before the district court, this Court will not consider it on appeal. *See Access Now, Inc.*, 385 F.3d at 1331-32.

## II

We review the denial of a motion to compel discovery for abuse of discretion. *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001). We will reverse a district court's discovery ruling only if the court committed a clear error of judgment or applied the wrong legal standard. *Josendis*

*v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011). Additionally, we will not overturn a discovery ruling unless the ruling resulted in substantial harm to the appellant. *Id.*

Federal Rule of Civil Procedure 26(b) grants the district court broad authority to control the scope of discovery. *See* Fed. R. Civ. P. 26(b). Under Rule 16(b), a district court must issue a scheduling order limiting the time to complete discovery. Fed. R. Civ. P. 16(b)(3)(A). "[W]e have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." *Josendis*, 662 F.3d at 1307.

Here, the district court did not abuse its discretion when it decided to strictly enforce its scheduling order. The court's scheduling order indicated that the date of completion for discovery was the final date that discovery could be made. The order further stated that all discovery requests and motions had to be filed so that the discovery requested would be due before the completion date. Pursuant to the court's last discovery-deadline extension, the completion date was February 21, 2017.

Because interrogatories and requests for admission are "discovery paper" within the meaning of Federal Rule of Civil Procedure 5, they are subject to its service requirements, which make service by mail permissible. *See* Fed. R. Civ. P. 5(a)(1)(C), 5(b)(2)(C). Further, because Rules 33 and 36 specify time periods, but

do not provide a method of computing those time periods, they are subject to the rules articulated in Rule 6. *See* Fed. R. Civ. P. 6(a), 33, 36. As a result, when Cagle mailed her interrogatories on January 20, 2017, and her request for admissions on January 21, 2017, the government's responses were due on February 23 and February 24, 2017, respectively. *See* Fed. R. Civ. P. 6(d), 33(b)(2), 36(a)(3). Because Cagle's discovery requests required responses after the completion date for discovery, she failed to comply with the terms of the court's scheduling order. The district court's decision to enforce the terms of its scheduling order and deny Cagle's motion to compel discovery did not constitute an abuse of discretion. *Josendis*, 662 F.3d at 1307.

### III

We review a district court's decision not to appoint counsel for abuse of discretion. *Smith v. Sch. Bd. Of Orange Cty.*, 487 F.3d 1361, 1365 (11th Cir. 2007).

Under Federal Rule of Civil Procedure 72, a party may file objections to a magistrate judge's ruling on non-dispositive matters within 14 days of being served with the order. Fed. R. Civ. P. 72(a). We have stated that "where a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waived his right to appeal those orders in this Court." *Smith*, 487 F.3d at

1365.  That rule holds even for *pro se* litigants.  *Farrow v. West*, 320 F.3d 1235, 1248 n.21 (11th Cir. 2003).

Here, Cagle has waived her right to appeal the magistrate judge's orders denying her motions to appoint counsel.  The magistrate judge denied Cagle's initial motion to appoint counsel on April 8, 2015.  To the extent that we may construe Cagle's second motion to appoint counsel as an objection to the magistrate judge's order, the motion was untimely because it was filed on May 5, 2015.  *See* Fed. R. Civ. P. 72(a).  Similarly, to the extent that we may construe the parties' case-management-report statement that Cagle anticipated filing a motion seeking an accommodation as an objection to the magistrate judge's June 5, 2015, order denying her second motion to appoint counsel, it was also untimely because it was filed on October 6, 2015.  *See* Fed. R. Civ. P. 72(a).  Because Cagle did not timely object to the magistrate judge's orders, she waived her right to appeal those orders.  *See Smith*, 487 F.3d at 1365; *Farrow*, 320 F.3d at 1248 n.21.

**IV**

We review a district court's order granting summary judgment *de novo*, and view "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party."  *Battle v. Bd. of Regents.*, 468 F.3d 755, 759 (11th Cir. 2006).  A district court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is

6

entitled to judgment as a matter of law." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). If shown, the burden shifts to the nonmoving party to show that a genuine issue of fact exists. *Id.* "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

Under the Federal Tort Claims Act, the United States is liable for the negligence of federal employees acting within the scope of their employment if a private person under like circumstances would be liable under the law of the state where the act or omission occurred. 28 U.S.C. §§ 1346(b)(1), 2674; *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). However, tort claims not presented to the appropriate agency within two years of the claim arising are barred. 28 U.S.C. § 2401(b). The two-year statute of limitations begins when the plaintiff is injured. *Price v. United States*, 775 F.2d 1491, 1493 (11th Cir. 1985). Because the acts and omissions in this case are alleged to have occurred in Florida, Florida law applies.

Whether a claim constitutes a medical-malpractice claim under Florida law depends on whether it meets the statutory definition of a medical-malpractice claim. *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 947 (Fla. 1994). A medical-malpractice claim is defined as a claim "arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a). In

7

determining whether a claim is a medical-malpractice claim, the plaintiff's labels are not dispositive; the court must decide whether the allegations contained in the complaint rely on the application of the medical-malpractice standard of care. *Vance v. Okaloosa-Walton Urology, P.A.*, 228 So. 3d 1199, 1200 (Fla. Dist. Ct. App. 2017); *see Palms W. Hosp. Ltd. P'ship v. Burns*, 83 So. 3d 785, 788 (Fla. Dist. Ct. App. 2011) (holding that allegations of a death resulting from lack of treatment constituted a medical negligence claim where the death was alleged to have resulted from on-call doctors failing to respond).

Under Florida's medical-negligence statute "[t]he prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Fla. Stat. § 766.102(1); *see id.* § 766.202(7) (defining "medical negligence" as "medical malpractice").

If a complaint asserts a medical-malpractice claim, the plaintiff must establish "the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claimed." *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984); Fla. Stat. § 766.102(1). "In medical malpractice cases, the standard of care is determined by a consideration of expert testimony." *Pate v. Threlkel*, 661 So. 2d

8

278, 281 (Fla. 1995).  Although expert testimony is not necessary where "only the exercise of common sense and ordinary judgment are required" to prove medical negligence, *Stepien v. Bay Mem'l Med. Ctr.*, 397 So.2d 333, 334 (Fla. Dist. Ct. App. 1981), if "the method of treatment is challenged[] [then] expert testimony is required" because "neither the court nor the jury can or should be permitted to decide, arbitrarily, what is or is not a proper diagnosis or an acceptable method of treatment," *Sims v. Helms*, 345 So. 2d 721, 723 (Fla. 1977) (quoting *Atkins v. Humes*, 110 So. 2d 663, 666 (Fla. 1959)).  "Where a plaintiff in a medical negligence action does not establish what standard of care existed under the circumstances of the case, and therefore is unable to show a breach of such care, a directed verdict is appropriate." *Stepien*, 397 So. 2d at 334.  If a defendant shows that a plaintiff is unable to present evidence of the negligence that he alleges in his complaint, then no genuine issue of material fact exists and summary judgment may be granted in favor of the defendant.  *Sims*, 345 So. 2d at 724 (Fla. 1977).

## A

Before addressing the merits of the district court's summary judgment decision, we must dispose of two threshold matters.

First, Cagle asserts that the district court had no authority to grant summary judgment because the following motions were pending at the time: a motion for sanctions regarding depositions, a motion for accommodations, a motion to extend

9

time for discovery, a motion for reconsideration, and a motion for sanctions for the government's violation of a mediation notice. That is incorrect. There were only two pending motions before the district court when it granted summary judgment. First, there was no motion for sanctions against the government for the nonappearance of five witnesses at Cagle's deposition because the language that Cagle utilized in her motion to compel discovery and her motion for sanctions indicated that sanctions on those grounds would be sought in a future motion. Second, there were no pending motions for accommodations because the request was denied by the magistrate judge and the case-management report only indicated a future intent to file another motion. Third, Cagle's motion for reconsideration was not pending because the court rendered a decision on the motion contemporaneously with its grant of summary judgment. Therefore, the only motions not addressed by the court at the time it granted summary judgment were Cagle's motion for sanctions and the renewed motion to compel discovery contained in her response to the government's motion for summary judgment.

The district court did not err in ruling on these two pending motions after granting summary judgment. The court had the authority to rule on Cagle's sanctions motion after imposing judgment and, by the same token, did not have to rule on the motion before imposing judgment. *See Didie v. Howes*, 988 F.2d 1097, 1103 (11th Cir. 1993). As to Cagle's renewed motion to compel disclosure, we

find no error in the district court's reaffirmation of its previous decision that the motion was untimely; the renewed motion was identical to the previously denied motion to compel and, as already explained, that motion was not timely filed. Further, the court affirmed its ruling on Cagle's motion contemporaneously with its order granting summary judgment.

Second, Cagle's complaint alleges that, on August 20, 2010, Raymond was beaten, choked, and threatened by VA nurses after he broke free from his restraints and was found using a cellphone that the nurses negligently allowed him to keep. The VA letter indicates, however, that Cagle filed her administrative claim on June 14, 2013, and solely on negligence grounds. Because the intentional-tort claim was not presented to the VA within two years of the claim arising, that claim is barred, and will not be considered in determining whether the court erred in granting summary judgment. 28 U.S.C. § 2401(b).

**B**

As to the merits, Cagle asserts what is in fact a medical-malpractice claim— her insistence to the contrary notwithstanding—and she failed to meet the requirements for proving such a claim. Cagle's references to Florida's wrongful death statute, wrongful death, and the term "medical malpractice" in her complaint and civil cover sheet are not dispositive of whether her claim is a medical-malpractice claim. *Vance*, 228 So. 3d at 1200. In making her allegations that the

11

VA breached a duty of care owed to Raymond, however, Cagle relies on a standard of care that is identical to Florida's medical-malpractice standard of care. Regarding Raymond's borderline personality disorder ("BPD"), Cagle alleges that the VA's psychiatrists erred in not diagnosing Raymond with BPD and that their failure to do so resulted in the VA physicians making misinformed treatment decisions that contributed to Raymond's death. Although Cagle also alleges that the VA failed to document Raymond's BPD in its records, that omission arises from the psychiatrist's conclusion that Raymond no longer had that diagnosis. Because the allegations surrounding Raymond's BPD rely on the application of medical skill and judgment in making a diagnosis and recommending treatment, those allegations arise from the rendering of medical services and are therefore medical-malpractice claims under Florida law. *See Palms W. Hosp. Ltd. P'ship*, 83 So. 3d at 788.

Cagle's factual allegations surrounding Raymond's ischemic heart disease all involve allegations that the VA failed to conduct evaluations and tests in response to various heart-related risk factors and diagnose Raymond with ischemic heart disease, or that the VA failed to make treatment decisions to prevent the disease. As with the allegations surrounding Raymond's BPD, these allegations rely on the application of medical skill and judgment to deciding whether risk factors related to heart disease required that the VA conduct certain tests or provide

12

specific treatments. Consequently, Cagle's ischemic-heart-disease allegations arise from the failure to render medical services, *see Palms W. Hosp. Ltd. P'ship*, 83 So. 3d at 788, and she therefore asserts a medical malpractice claim rather than an ordinary negligence claim, *see Vance*, 228 So. 3d at 1200.

\*      \*      \*

Cagle asserted a medical-malpractice claim, and Florida law thus required that she prove the standard of care owed by the VA. *See Gooding*, 445 So. 2d at 1018; Fla. Stat. § 766.102(1). Though Cagle alleged that the VA owed Raymond a duty of care and that it breached that duty of care, she did not present any expert testimony to establish *what* standard of care the VA owed, and she was therefore unable to establish the elements of medical malpractice. *See Stepien*, 397 So. 2d at 334. As a result, no genuine issue of material fact existed, and the district court did not err in granting summary judgment. *See Sims*, 345 So. 2d at 724.

**AFFIRMED.**