[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-13486

Non-Argument Calendar

_____

SHADDY WHITTAKER,

Plaintiff-Appellant,

*versus*

ARNALDO SANCHEZ,
D.O., FCC Coleman,
EDGAR MORALES,
MLP, FCC Coleman,
D. IVEY,
Nurse, FCC Coleman,
LARRY R. JOHNSON,
Medical Doctor, Leesburg Regional Medical Center,
UNITED STATES OF AMERICA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:16-cv-00596-PGB-PRL

_____

Before NEWSOM, ANDERSON, and MARCUS, Circuit Judges.

PER CURIAM:

Shaddy Whittaker, a prisoner proceeding *pro se*, appeals from the district court's grant of summary judgment in favor of Arnold Sanchez, Edgar Morales, Nurse D. Ivey and Dr. Larry Johnson in this civil rights action, brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The district court granted summary judgment to the defendants on both of Whittaker's claims -- (1) deliberate indifference to his medical needs in violation of the Eighth Amendment; and (2) medical malpractice in violation of the Federal Tort Claims Act ("FTCA"). After careful review, we affirm.

We review a district court order granting summary judgment *de novo* and view "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). A district court may grant summary judgment if "the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). If shown, the burden shifts to the nonmovant to establish that a genuine issue of fact exists. *Id.* An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmovant. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

*Pro se* pleadings are held to a less stringent standard than counseled pleadings and, therefore, are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Nevertheless, *pro se* litigants are still required to conform to procedural rules. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). The district court need not "rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

The relevant background, for purposes of summary judgment, is this. On January 12, 2015, Whittaker fell, while incarcerated at FCC Coleman, and injured his right hand. He alleged that, after the injury, he went to the prison medical unit. There, Nurse Ivey advised Whittaker to go to "sick call," where on January 16, 2015, Whittaker was treated by Edgar Morales. The pertinent medical records reflect that Morales immediately ordered an x-ray, which showed a fracture of Whittaker's hand, and sent Whittaker to a local hospital for treatment. At the hospital, Dr. Johnson diagnosed a finger fracture, fitted an aluminum splint on the finger, and noted that Whittaker "[w]ill need Orthopedic eval within a week."

When Whittaker returned to prison, he said he felt "great" and was ready to return to his unit.

At a follow-up visit with Morales at the prison medical unit on January 20, Whittaker complained of pain and was taking ibuprofen daily. Morales requested an orthopedic evaluation by January 30 and advised Whittaker, in the meantime, to follow up at sick call "as needed" and to return to the medical unit immediately if his condition were to worsen. For unknown reasons, Whittaker's appointment with the orthopedist was delayed by three weeks, but, notably, he did not return to the medical unit with any complaints during that time. On February 23, the orthopedist removed Whittaker's splint and noted that while there was "significant displacement in the healing of the [fracture]," Whittaker reported minimal to no pain and did not need future splinting nor a follow-up visit with the orthopedist. Whittaker saw Morales in the prison medical unit on March 30, did not complain of pain, had good range of motion, and showed mild swelling due to a callus at the fracture site.

First, we are unpersuaded by Whittaker's claim that the district court erred in granting summary judgment to the defendants on his Eighth Amendment claim. To prevail on a claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment, a plaintiff must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *See Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010); *Mann*

v. Taser Int'l., Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). To prove that an official acted with deliberate indifference, the plaintiff must show that the official (1) had subjective knowledge of a risk of serious harm, (2) disregarded the risk, and (3) displayed conduct beyond negligence. Gilmore v. Hodges, 738 F.3d 266, 274 (11th Cir. 2013).

We've recently emphasized that "the deliberate indifference standard . . . is far more onerous than normal tort-based standards of conduct sounding in negligence, and is in fact akin to subjective recklessness as used in the criminal law." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1271 (11th Cir. 2020) (quotations omitted). As a result, medical treatment violates the Eighth Amendment "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (quotations omitted). On the one hand, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). But, on the other hand, evidence of negligence "in diagnosing or treating a medical condition" or a showing of medical malpractice does not establish deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 106 (1976). This means that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which

sound in state tort law." *Hoffer*, 973 F.3d at 1272 (quotations omitted).

On the summary record before us, Whittaker has failed to show any dispute of material fact concerning his Eighth Amendment claims. For starters, Whittaker admitted in his complaint that Nurse Ivey instructed him as to the proper way to receive medical attention when he complained of pain in his hand -- she advised that he go to sick call, and a few days later he received treatment at sick call by Morales. Whittaker did not provide any evidence that Ivey's conduct in instructing him on how to seek medical attention was deliberately indifferent, much less negligent.

As for the three-week delay for the orthopedic consultation, the undisputed record indicates that Whittaker received care and a splint for his hand injury at the hospital, several days later he complained to Morales in the prison medical unit that he was in pain, Morales requested an orthopedist appointment within 10 days, the orthopedist appointment instead took place about 30 days later, and during the delay, Whittaker did not return to the medical unit with any complaints. Then, at a follow-up visit another month or so after he saw the orthopedist, Whittaker did not report any pain. There is nothing in this record that indicates that Morales or anyone else in the medical department knew that the delay in treatment would place Whittaker at a serious risk of harm and chose to ignore it, nor, importantly, that their conduct was anything more than mere negligence. *See Gilmore*, 738 F.3d at 274. Indeed, this is not a case where his treatment was so cursory as to amount to

no treatment at all; rather, Whittaker has disputed the adequacy of the treatment he received, and we cannot say that there was any dispute of fact about whether the treatment he received was so reckless as to shock the conscience. *Hoffer*, 973 F.3d at 1271-72. Accordingly, the district court did not err in entering summary judgment on Whittaker's Eighth Amendment claims.

We also find no merit to Whittaker's claim that the district court erred in granting summary judgment to the defendants on his FTCA claim. Under the FTCA, the United States is liable for the negligence of federal employees acting within the scope of their employment if a private person under like circumstances would be liable under law of the state where the act or omission occurred. 28 U.S.C. §§ 1346(b)(1), 2674; *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). Because the acts and omissions are alleged to have occurred in Florida, Florida law applies. 28 U.S.C. § 1346(b)(1).

Whether a claim constitutes a medical malpractice claim under Florida law depends upon whether it meets the statutory definition of a medical malpractice claim. *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 947 (Fla. 1994). A medical malpractice claim is defined as a claim arising out of the rendering of, or the failure to render, medical care or services. Fla. Stat. § 766.106(1)(a). The plaintiff's labels are not dispositive as to whether a claim sounds in medical malpractice; the district court must decide if the allegations in the complaint rely on the application of the medical

malpractice standard of care. *Vance v. Okaloosa-Walton Urology, P.A.*, 228 So. 3d 1199, 1200 (Fla. Dist. Ct. App. 2017).

Under Florida's medical negligence statute, the prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers. Fla. Stat. §§ 766.102(1), 766.202(7) (defining "medical negligence" as "medical malpractice"). If the complaint asserts a medical malpractice claim, the plaintiff must establish the standard of care owed by the defendant, the defendant's breach of the standard of care, and proximate causation between the breach and the damages claimed. *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984); Fla. Stat. § 766.102(1). The standard of care is usually determined by consideration of expert testimony. *Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995). Expert testimony is not necessary where only the exercise of common sense and ordinary judgment are required to prove medical negligence. *Stepien v. Bay Mem'l Med. Ctr.*, 397 So. 2d 333, 334 (Fla. Dist. Ct. App. 1981); *accord Atkins v. Humes*, 110 So. 2d 663, 665 (Fla. 1959). But, where the method of treatment is challenged, expert testimony is required. *Sims v. Helms*, 345 So. 2d 721, 723 (Fla. 1977). The reason is because "neither the court nor the jury can or should be permitted to decide . . . what is or is not a proper diagnosis or an acceptable method of treatment." *Id.* (quotations omitted). A plaintiff's failure to establish what standard of care applies renders him

unable to establish a breach of the standard of care. *Stepien*, 397 So. 2d at 334. Where a defendant shows that a plaintiff is unable to present evidence of the negligence he alleges in his complaint, no genuine issue of material fact exists, and summary judgment may be granted against him. *Sims*, 345 So. 2d at 724.

Here, even if we liberally construe Whittaker's brief as appealing the grant of summary judgment on his FTCA claim, he has not shown that the district court erred in granting summary judgment. Notably, to succeed on his FTCA claim, Whittaker was required to prove the elements of an FTCA medical malpractice claim, which include the standard of care owed by the government. *See Tannenbaum*, 148 F.3d at 1263; *Gooding*, 445 So. 2d at 1018; Fla. Stat. § 766.102(1). The allegations contained in Whittaker's amended complaint concern the appropriate diagnosis the FCC Coleman medical staff should have made and the correct form of treatment they should have pursued -- thus, establishing the standard of care in this case turns on questions that require expert medical testimony, rather than mere common sense, to answer. *See Sims*, 345 So. 2d at 723; *see also Stepien*, 397 So. 2d at 334. But Whittaker did not present any expert medical testimony to establish the standard of care that FCC Coleman owed him, so he was unable to show that FCC Coleman breached any standard of care, and, as a result, was unable to establish the elements of medical malpractice. *Stepien*, 397 So. 2d at 334; *Sims*, 345 So. 2d at 724. Accordingly, the district court did not err in entering summary judgment in favor of the government. *Sims*, 345 So. 2d at 724.

10                    Opinion of the Court                    19-13486

AFFIRMED.