[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12966

Non-Argument Calendar

_____

ADRIANO JIMENEZ,
as Personal Representative of the Estate of Marisela
Fernandez,

                                        Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,
d.b.a. Miami VA Healthcare System,

                                        Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-21368-BB

———————————

Before WILSON, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

The facts of this case are very tragic. Adriano Jimenez's wife passed away while receiving treatment at the Department of Veterans Affairs Medical Center in Miami. Jimenez filed suit against the United States for negligently causing his wife's death. The district court granted summary judgment for the United States. After careful review, we affirm. While recognizing the tragic nature of this case, we agree with the district court that there was no evidence on which a jury could determine that the hospital staff breached the relevant standard of care.

I

Jimenez's wife, Marisela Fernandez, suffered from amyotrophic lateral sclerosis—otherwise known as Lou Gehrig's disease. In 2017, she was admitted to the VA Medical Center in Miami with an acute decline in dysphagia. She underwent surgery for the placement of a percutaneous gastro-jejunostomy (PGJ) feeding tube. And the surgery appeared successful.

Later, however, Fernandez needed to use the restroom. So three nurses executed a "Hoyer lift" to move her from the hospital bed. During the maneuver, Fernandez cried out in pain.

Her condition then worsened. The hospital staff stopped her feedings and completed an X-ray and CT scan. The testing revealed free abdominal air, a collapsed stomach, and fluid in the pelvis. Accordingly, doctors performed another surgery to remove the PGJ tube—which had become dislodged.

The next day, Fernandez became unresponsive and passed away. Her autopsy revealed that she had died of sepsis and aspiration pneumonia due to complications arising from the dislodged PGJ tube.

Jimenez sued the United States under the Federal Tort Claims Act, alleging various theories of medical negligence. The district court granted the government's motion for summary judgment, explaining that Jimenez "fail[ed] to present any expert evidence with respect to the standard of care applicable to the placement and securing of a PGJ tube or the proper use of a Hoyer lift to move a patient." Jimenez appealed.

## II

"We review *de novo* a district court's order granting summary judgment, viewing all evidence in favor of the nonmoving party." *Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1282 n.2 (11th Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

4                    Opinion of the Court                    21-12966

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### III

Plaintiffs injured by the negligence of the VA's medical professionals can sue the United States under the FTCA.  *Smith v. United States*, 7 F.4th 963, 973 (11th Cir. 2021).  When they do, the "source of substantive liability" is the "'law of the place where the act or omission occurred.'"  *FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994) (quoting 28 U.S.C. § 1346(b)).  Here, that means the law of Florida governs our analysis.

In Florida, a medical-negligence claimant has the burden of proving that "the alleged actions of the health care provider represented a breach of the prevailing professional standard of care."  Fla. Stat. § 766.102(1).  "The standard of professional care is a level of care, skill, and treatment that, in consideration of all surrounding circumstances, is recognized as acceptable and appropriate by similar and reasonably prudent health care providers."  *Saunders v. Dickens*, 151 So. 3d 434, 441 (Fla. 2014) (citing Fla. Stat. § 766.102(1)).  Establishing this standard "usually necessitates expert testimony by those physicians who perform similar services in the community."  *Bush v. United States*, 703 F.2d 491, 496 (11th Cir. 1983); *accord Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995).

While his wife's death was certainly tragic, Jimenez hasn't marshaled evidence from which a reasonable jury could conclude that the VA breached its duty of care.  Jimenez doesn't dispute that

the VA acted reasonably following the Hoyer lift—as his own expert acknowledged. But he insists that the evidence shows that the hospital breached its duty when its staff (a) placed and secured the PGJ tube or (b) executed the Hoyer lift. We disagree as to both.

Starting with the placement of the PGJ tube, one of the defendant's experts opined that the procedure "was performed without complication and the tube was confirmed to be in good position with the aid of fluoroscopy." The tube was also "secured . . . in place with a self-retaining loop and balloon." As a result, the expert was "quite confident in saying that the standard of care was met . . . despite [the] unfortunate outcome." And another expert was of the same opinion. In response, Jimenez's expert, Dr. Steven Lee-Kong, noted that "dislodgement of gastronomy tubes is a known complication of their use," and he confirmed that "the risks of dislodgement can be minimized by careful attention during their placement." But Dr. Lee-Kong didn't offer any opinion as to the applicable standard of care for placing or securing PGJ tubes. Nor did he suggest that the standard was breached here. As such, Dr. Lee-Kong's expert report doesn't create a genuine issue of material fact.

That brings us to the Hoyer lift. Again, both defense experts concluded that the lift wasn't performed negligently. And again, Dr. Lee-Kong didn't offer a contrary opinion. To be sure, he said that "it appears that the tube was dislodged on or around the time" Fernandez was moved. But he didn't suggest or explain how the tube becoming dislodged was a product of negligence. Nor did he

offer any opinion as to whether the hospital staff breached medical protocol in executing the lift.  He simply noted that the risk of dislodgement could be "minimized" by exercising "careful attention" during patient movement.  He then declined to offer an opinion as to whether such attention was exercised in this case, remarking only that "[d]etails surrounding how [Fernandez] was moved should be more clearly characterized further."  Thus, Dr. Lee-Kong's report doesn't permit Jimenez to survive summary judgment on the lift-related claim either.

Finally, Jimenez emphasizes his testimony that his wife immediately cried out in pain while being lifted.  He's right that a reasonable jury could infer from this testimony that the PGJ tube became dislodged during the Hoyer lift.  But causation isn't enough to establish liability.  *See Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984).  Instead, the plaintiff must prove that the harm was proximately caused *by a breach of the standard of care*.  "Negligence cannot be inferred from the fact that the" medical provider's actions were "unsuccessful or terminated in unfortunate results."  *Sims v. Helms*, 345 So. 2d 721, 723 (Fla. 1977); *see also* Fla. Stat. § 766.102(3)(b).

★  ★  ★

In sum, Jimenez failed to offer evidence as to "what standard of care existed under the circumstances of the case." *Stepien v. Bay Mem'l Med. Ctr.*, 397 So. 2d 333, 334 (Fla. Dist. Ct. App. 1981).  Absent such evidence, "a lay jury could not have determined, except by pure speculation, whether [the hospital staff] chose the correct

21-12966                Opinion of the Court                7

method of treatment or whether [they] deviated from accepted medical practice" in placing and securing the PGJ tube or executing the Hoyer lift. *Sims*, 345 So. 2d at 723. Summary judgment was therefore appropriate. *See id.* at 724.

We **AFFIRM**.